Good morning, Your Honors. May it please the Court, Rebecca Jones appearing for Petitioner Fernando Zavala. I would like to reserve two minutes for rebuttal, and I will try to monitor that myself. I realize the Court's read the briefs, so I'm going to try to hit some highlights that are not covered as thoroughly in the briefs. The first issue I wanted to point out to the Court on the exhaustion argument is that under California law, the federal in the California courts, the federal standard of harmlessness under Chapman is harder to meet than the state law harmless error standard of Watson. And since the state court here found that the instructional error was harmless under Watson, there's no reasonable probability if the case went back to the California courts that the California courts would decide that it was actually prejudicial under Chapman. So it would be futile to take it back. So counsel, just walk through the procedural complexities here with me. Your client failed to exhaust his federal claim in state court. And so your claim is unexhausted. And your argument now is, well, we could go back to state court and try and exhaust it, but the California courts wouldn't hear it, so it's sort of technically exhausted. So now why aren't you just procedurally barred? The California courts never had an opportunity to rule on this. You've never raised it. How is it you get to come into this court and raise these arguments for the first time and expect us to deal with them? Why aren't they procedurally barred? Right. Why aren't they procedurally barred? Because it's not – I don't believe it's a procedural bar if it would be futile to go back to the court because the court doesn't even recognize that instructional error is subject to the rule of Chapman. This is like waiver forfeiture. If you didn't argue something in your briefs and come up and try and present it now at oral argument, we don't listen to it if you've waived it. You've waived this argument. Your client waived this argument in the California courts. How is it you get to come into federal court and for the first time raise new arguments? Well – I understand that you're going to say, well, the California courts won't hear it, so we can't exhaust it. Well, that's right. You can't exhaust it. It's too late. Now, how do you get into federal court on that, on those arguments? Well, first of all, procedural bar has never been raised by the Respondent, and it's not been briefed by the parties, although I understand the court's position, because when you're talking about exhaustion, sort of it's exhaustion and procedural bar very closely intertwined. But I also think that, you know, exhaustion isn't actually a jurisdictional bar to this Court hearing Mr. Zafala's petition, so it could still be. No, but when we, as we go through AEDPA, of course, AEDPA contemplates that State courts have dealt with these things, and we have very, very high standards for how we review State court, State courts have addressed these issues. Since you, the California courts, never, ever had an opportunity to even address these questions, what standards do we use now? By forfeiting them and waiving them in California State courts, you get to come into federal court and raise them on a de novo standard? Well, I think it's a little bit harsh to say the California courts never had an opportunity to hear this claim at all. I mean, the court, California courts heard the substance of the claim, the instructional error, and they actually agreed that there was instructional error in this case. The only thing that, and they had an opportunity to discuss the question of prejudice. Well, although at that time you never raised a Federal constitutional claim, but with regard to exhaustion, as I understand it, when the parties were before the district court, the district court specifically ordered the State to raise an exhaustion claim, and the State declined to do that. Is that correct? I don't know if they, it depends how you put it. Well, they didn't file a claim. They failed to. They didn't file a motion to dismiss as instructed by the district court if they were to take the position that the claim is unexhausted. So theoretically, or procedurally, rather, had they raised the exhaustion claim, I suppose your client could then go back to State court, exhaust the claim at that time, and perhaps seek a stay in abeyance before the district court. Right. And that would have been about 5 years ago as well, because the original, I believe in this case, was filed in 2008, and it took quite some time for the district court to decide it, and then it took this court, I believe, another year and a half to decide to issue a certificate of appealability. So again, I mean, it's this – I don't disagree, Judge Bivey, that there's an exhaustion question in this case, but I disagree that that, that the fact of the exhaustion question renders this claim procedurally barred, because I think, first of all, like I said, as Judge Wynn pointed out, exhaustion was never even raised or discussed in the district court and has been sort of sitting out there for quite some time. Second of all, I don't believe, but I have to admit that I did not research this because it wasn't addressed in the briefs, that just because something is unexhausted means it's necessarily procedurally barred. Kennedy, there's different types of procedural bars. That's true. If we assume that, that exhaustion is not applicable here, either because the State just never claimed exhaustion below or for whatever reason, there's also the procedural bar with reference to independent State grounds of timeliness. So let's assume that you wouldn't be barred from bringing a claim before State court, it would be untimely, and that's a separate procedural bar, isn't it? Yes. In other words, so why wouldn't that be an independent State ground that would preclude us from granting relief? Well, again, we don't have a record on or briefing on the question of timeliness of a theoretical. We know what the State law is. No, no, no. We know what the State law is. I'm just pointing out that there's some gaps out there. So I would obviously, if I were the person who were directed to go back and file an exhaustion petition at this point, I theoretically could file a petition saying that there was ineffective assistance of appellate counsel for not federalizing the claim. I believe, you know, she's an experienced appellate attorney at the time and probably had no real – I believe she federalized other claims in the petition for review, if I'm not mistaken. Now, obviously, again, because we don't have a record on this because it's never been raised by Respondent earlier in the proceedings here, I can't tell you whether she had a strategic reason, whether she believed for good – for some sort of good reason that there was no Federal basis for this claim. I don't think that's the case. I think there's a body of law out of this circuit, including Bradley v. Duncan and Condi v. Henry, saying that, you know, theory of defense instructions do have a constitutional basis. So without further litigation and research, I wouldn't be able to tell the Court exactly whether the timeliness bar would be applied in this case. But there's certainly a way around the timeliness bar through an effective assistance of counsel, potentially a predecessor. Kennedy, if you admitted the Federal claim was not presented and it's never been before the State court, wouldn't it be untimely to bring the Federal claim now in a State court? So why wouldn't that independent State ground preclude you from getting habeas relief? The California rules on timeliness are very, very complicated, and they're very loosely applied. I mean, I realize that this Court has said timeliness is an independent, an adequate State bar, but I don't know. You know, I've filed habeas petitions in the State courts that I was concerned that the AG would claim that they were untimely, and they never raised timeliness for any reason whatsoever, so. If timeliness is not a bar, then why don't you go and exhaust in California? Because at this stage of the proceedings, till I would go back and exhaust everything, Mr. Cefalo would be done with his sentence. He's only, I believe at this point, he may only have a year left on his sentence, and some of that's, there's no timelines for some of the deadlines in the State courts for how quickly they have to. I appreciate the practical problem there, but of course, you realize you're in the position then of saying, well, because it would be inconvenient for my client to go back to State court, the Federal court should take it and decide it under AEDPA, which gives us, which is a very, very different standard than the California courts would decide this question. No, I understand that. So are you telling us then that it might not be untimely for you to go back to California and exhaust this? That is correct. I believe it might not be untimely. It would have to depend on how the courts would look at it and how it would get litigated and what kind of declarations I could get. You know, my client was pro per for a big chunk of these proceedings. I don't know how the State courts would look at that in terms of a timeliness allegation and him not realizing that the issues had not been federalized, and I'm down to 28 seconds. I'm going to allow you some time for rebuttal, so. Okay. Thank you, Your Honor. Mr. Glassman. Good morning, Your Honor, and may it please the Court, David Glassman, for the Respondent. I'd like to also address the exhaustion issue, but in a way that I think will to some degree delve into the merits, actually, because I think they are related in this case. If one looks at the way in which this issue was positioned all along the way in State court by what counsel has indicated as experienced appellate counsel, there was an explicit discussion of this issue as only involving the State law claim, and that was stated in the opening brief, the reply brief in State court, and the discretionary petition for review in the California Supreme Court, whereas other claims were identified as constitutional in nature. And that is relevant ultimately to the claim that was raised by the State, namely the Teague argument that we haven't addressed and maybe won't address, as well as the exhaustion issue. In other words, by all indications, this was a State law only claim. And in fact, there's an indication in the reply brief in this court at page 4 that the State courts do not consider the alleged failure to present a defense to be an issue that necessarily triggers Federal constitutional analysis. So the point is, if we only have a claim that appears to be a State law-based claim, when the petitioner is ultimately confronted with an exhaustion argument, even though belatedly, because I don't have an answer, Judge Winn, as to why exhaustion wasn't pursued, except that 2254b2 says that unless the State explicitly waives it, it remains an issue in the case. So the point is, while that may be true for exhaustion, it's not true for procedural default, and as I read your briefs, the State never raised a procedural default argument, whether in the district court or here before this court. So why isn't it waived? Because it was never claimed. Well, the exhaustion argument, standing alone, is an argument that is preserved. And the exhaustion argument was never claimed. Well, setting aside exhaustion, now we're moving to procedural default. Do I understand it correctly that the State has never raised the claim or the argument that the petitioner's claim would be procedurally defaulted? The State is not claiming, for example, that if hypothetically a petition, a renewed petition were presented in State court, I can't guarantee the basis on which a State court would resolve that claim. So when we're talking about a prospective evaluation of what might happen if a future petition were filed and ruled upon, I don't know on what basis a State court would deny relief, would deny relief on substantive grounds, on procedural grounds, or would grant relief. But that's why I think it's important to look back, both for exhaustion purposes and fatigue purposes, which is what we have argued in this case, at the claim that was raised. And the claim that was raised in State court was never that there was a failure to present a defense. That was never the claim. And you cannot credibly make that claim on these facts. If the issue is whether or not this petitioner was allowed to present evidence and argument of intoxication, he was. And we know that because it's asserted in the opening statement at trial long before there's any discussion on jury instructions. It's asserted through the introduction of intoxication evidence. And it's asserted in the closing argument. This jury was well aware that they were hearing evidence of intoxication for a reason. If it were irrelevant and irrelevant to a defense, they wouldn't have heard any of it. So State of the Court. Kennedy. I thought they were instructed with respect to intoxication not being a defense. So what was the relevance? In the absence of when the jury is told this, don't, you can't consider this as a defense. In other words, his intoxication didn't have anything to do with a defensive matter. What was the relevance that you say when the judge tells him, don't take this into consideration? Well, I'll have to go back, Your Honor, to the brief and see whether or not an instruction that absolute was presented to the jury. But certainly we know that defense counsel told the jury, you're going to hear evidence that my client was extremely intoxicated. But the reason that he's not guilty of the threats or the charged assault is that he didn't commit the crime. That's the defense in the case. The defense in the case wasn't he committed all of the elements or arguably he did, but intoxication precluded him from doing so in a meaningful way. The argument was that this was a liar's contest. In other words, he wasn't claiming I didn't know what I was doing because I intoxicated. He was saying I didn't do this. He says, Your Honor, this is the opening statement. So, again, we are, this is not, and there was no argument, this is impacted by a decision on jury instructions. There's no doubt my client was drunk. But my client wasn't so drunk that he went out and tried to shoot at somebody for no good reason and for no apparent reason. My client, I'm at 488 now of the transcript, my client didn't do anything wrong. When people tie it on, they become subject to the depredations of others. His argument was that the assailant was in fact the victim, but the victim had the good fortune of getting to the police first. That was the defense in this case. That is why no one argued there was a failure to allow a defense. And we know from the cases that have been decided by the Supreme Court that the failure to allow a defense has been interpreted as the refusal, if you will, to allow evidence to be introduced that would support a defense. And it's only in the sole context of entrapment in Matthews v. United States, which is not a habeas case, it's not a case based on federal constitutional law, that the Supreme Court has discussed refusal to instruct on a specific defense. So that is why, both on the facts of this case and in light of the argument that we did make under Teague v. Lane, this claim is precluded. As to what would happen in a hypothetical future petition, I can't guarantee. But again, if we go back to what I submit is the underlying issue in this case, there is no ability to claim a federal constitutional denial of a defense where, for just the reasons that I've indicated from the record, those claims are asserted. But the defense is something else. The defense is I didn't commit this crime. I didn't shoot at anyone. I shot in the air. And I didn't make the statements attributed to me in anything like the context that is being alleged. And that is why, ultimately, there is no federal constitutional violation in this case, which is why, whether we should have raised it and didn't, which is why State Appellate Counsel did not pursue what, in her view, was not a meritorious federal claim. Unless the Court has any questions, I'll submit. Roberts. Thank you, Mr. Glassman. Ms. Jones. Let's add a minute to our time. Just very briefly, I wanted to point out one point in regard to the Teague claim in the case that this Court actually gets to the Teague issue, and that is the primary case that Respondent is relying on for that argument is Gilmour v. Taylor. And it says very clearly near the beginning of the opinion at page 339, the only question before us is the retroactivity of Falconer, which is a Seventh Circuit case under Teague. It has nothing to they were not purporting to hold as a matter of substantive law that there's no federal constitutional right to theory of defense instructions. As for Respondent's comments here, I apologize, I realize that there was a substantive portion of Mr. Cefalla's defense was that I didn't do it, but it really focused almost entirely on the shooting aspect of it, whether he pointed a gun at the cab driver and whether he actually fired the gun in the air. And as to those counts, the intoxication was not a defense. Defense counsel did ask for an intoxication instruction, and under California law, you are allowed to and you should get defense instructions, even if there's potentially a couple of different versions of the facts. And it was pretty clear here that whether Mr. Cefalla was claiming he didn't actually do these acts or not, that there were enough other witnesses to say, yes, he was ranting and raving and saying these things and firing guns into the air, that any claim that he didn't do those things was wrong. Correct me if I'm wrong, counsel. I see you're over your time, so if I would indulge you for just a moment. All right. But correct me if I'm wrong. The jury was told intoxication is not a defense with regard to the assault charge only, right? Right. So the jury instruction had that specificity? Right. All right. Thank you. Yes. Thank you very much, Your Honor. We thank both counsel for the argument.
judges: Benavides, Bybee, Nguyen